IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:24-cr-00151

BEECHER LEE SHULER

### DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Beecher Lee Shuler, by her[1] counsel, and submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at her upcoming sentencing hearing. For the reasons set forth below, Ms. Shuler requests a sentence of 36 months' imprisonment.

### I. BACKGROUND

Beecher Shuler was born in Pennington Gap, Virginia, in 1981 and lived there with her mother and father until she was approximately five years old. Following the death of her father in approximately 1986, Beecher moved with her family to Raleigh County, West Virginia, where she was primarily raised by her sister (who is 15 years older than her) and her sister's significant other due to her mother being forced to work long hours. Beecher describes her childhood as "good" and denies any history of abuse or neglect. She graduated from Shady Spring High School in 2000

---

[1] Although biologically a male, Ms. Shuler experiences gender dysphoria and identifies as a transgender female with the preferred pronouns "she/her."

and obtained a Bachelor of Arts degree in Geography and Pre-Environmental Law from Concord University in 2005. After college, Beecher worked as a social worker in Rainelle, West Virginia, for approximately three years before taking a job as a tower hand for Tower Comm from 2012 until 2017.

Although Beecher's drug use began with smoking marijuana at age 13, her problems escalated while in college where she was introduced first to cocaine and then to Oxycodone, abusing approximately 300mg per day for a five-year period. Although she attempted to obtain treatment, including medically assisted treatment (MAT), she found that Methadone was harder to withdraw from than opioids. Beecher's drug abuse coincided with her involvement with the criminal justice system, resulting in several convictions and other arrests starting in 2008 that were either directly or indirectly related to her drug abuse. By 2017, she suffered her first felony conviction for Delivery of Methamphetamine for which she received a probationary sentence. She has not worked since that time. Recently, she has subsisted on SSDI benefits while her drug abuse has further escalated to the point of "speed balling" two grams of fentanyl and two to three grams of methamphetamine per day at the time of her arrest.

In addition to her drug abuse, Beecher has some significant physical and mental health needs. Most importantly, she was diagnosed with HIV in 2019 and takes Biktarvy to treat that condition. In 2020, she was in a motorcycle accident that resulted in her having a plate inserted into her right leg. She is allergic to Erythromycin and Zosyn antibiotics, and takes Paxil, Suboxone, Buspar, and

2

Trazodone in addition to the Biktarvy. She also experiences gender dysphoria in addition to major depressive disorder, anxiety disorder, and several controlled substance use disorders. As to her gender dysphoria, she has experienced difficulty while in custody and in treatment due to the challenges associated with expressing her preferred gender identity in those settings. She is interested in receiving feminizing hormone therapy and gender reassignment surgery while in custody.

The instant offense involves law enforcement conducting a couple of controlled buys of heroin/fentanyl from Ms. Shuler, followed by the execution of a search warrant at her apartment where law enforcement recovered several hundred Protonitazene pills, several firearms, and a myriad of other controlled substances in amounts consistent with personal use. Following the search warrant, Beecher provided a Mirandized interview to law enforcement in which she confessed to her conduct. On January 13, 2025, Ms. Shuler appeared before the Court and pleaded guilty pursuant to a written plea agreement to Count One of the Three-Count Indictment. The presentence report ("PSR") has been drafted and revised, and there are no objections that affect the advisory Guideline range. With a Total Offense Level of 19 and Criminal History Category of I, the advisory Guideline range is 87-108. For the reasons set forth below and those to be put on the record at the upcoming sentencing hearing, Ms. Shuler requests that the Court vary downward and impose a sentence of 36 months' imprisonment.

## II. SENTENCING FACTORS

In post-*Booker* sentencing, district courts are to calculate the appropriate Guideline range, consider that range in conjunction with other relevant factors under 18 U.S.C. § 3553(a), and impose a sentence. In this case, a sentence of 36 months would be sufficient, and not greater than necessary, based on the following:

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

According to Ms. Shuler's Mirandized statements – which appear to have been credited by law enforcement – she did not seek out to sell Protonitazene but was approached online by her supplier who offered to "make her rich." The supplier then fronted her a quantity of pills and advised that she owed $16,000. That process continued for approximately six months, with Ms. Shuler merely requesting one substance or another and the supplier provided significant quantities. At the time of her arrest, Ms. Shuler was unsure how much money she owed to her supplier. In sum, while Ms. Shuler was distributing drugs to make some money and help support her own drug habit, she never sought out the large quantities of which she was ultimately provided and found to be in possession. Accordingly, the Guideline range overstates the seriousness of the offense.

Likewise, Ms. Shuler's history and characteristics warrant a downward variance. Ms. Shuler's childhood was not as traumatic as some defendants who come before the Court, but she did suffer the loss of her father at a young age and was raised largely by her sister and her sister's boyfriend. However, it is Ms. Shuler's significant drug use, which started in college, coupled with her physical and mental

4

health challenges (as detailed above) that suggest a below-Guideline sentence is warranted.

> **(2) The need for the sentence imposed to:**
> **a. Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;**
> **b. Afford adequate deterrence to criminal conduct;**
> **c. Protect the public from further crimes of the defendant; and**
> **d. Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

This will be Ms. Shuler's first prison sentence of her life. As such, any length of time will pose additional challenges for her that most ordinary defendants do not face. Although Ms. Shuler does not wish to serve a long prison term, it is recognized that a multi-year sentence is appropriate in this matter. During that time, she will have access to valuable resources to help her address her drug addiction and her mental health challenges, and hopefully to better care for her gender dysphoria that appears to have caused her a great deal of stress in recent years. Clearly, she is an intelligent individual who is capable of finding gainful employment, but she recognizes her need to take accountability and to abide by appropriate treatment plans if she is to reach her potential. Considering all of these goals, a sentence of 36 months' imprisonment strikes the appropriate balance in this case.

> **(3) The kinds of sentences available;**

A sentence of 36 months falls within the statutory range.

> **(4) The kinds of sentence and the [Guideline] sentencing range;**

A downward variance is appropriate for the reasons stated herein.

**(5) Any pertinent policy statement;**

The requested sentence is not precluded by any pertinent policy statement.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and**

According to the JSIN database: During the last five fiscal years (FY2019-2023), there were 214 defendants whose primary guideline was §2D1.1 and Fentanyl was the primary drug type, with a Final Offense Level of 29 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 211 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 63 month(s) and the median length of imprisonment imposed was 60 month(s). For all 214 defendants in the cell, the average sentence imposed was 63 month(s) and the median sentence imposed was 60 month(s). Based on those average sentences, a downward variance to 36 months would not create an unwarranted disparity.

**(7) The need to provide restitution to any victims of the offense.**

Restitution is not at issue.

### III. CONCLUSION

WHEREFORE, for the reasons set forth herein, Beecher Lee Shuler requests that the Court sentence her to a term of 36 months' imprisonment. Counsel does not intend to call any witnesses and anticipates that the sentencing hearing will last approximately 30 minutes.

Respectfully submitted this 28th day of April 2025.

**BEECHER LEE SHULER**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/ Wesley P. Page**
Wesley P. Page, Bar No. 10529
Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: wesley_page@fd.org